### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**DEALER VSC, LTD.,**

          **Plaintiff,**        :

    **v.**

**TRICOR AUTOMOTIVE
GROUP-US-INC.,** *et al.,*        :

         **Defendants.**

**Case No. 2:21-cv-3880
Judge Sarah D. Morrison
Magistrate Judge Elizabeth A.
Preston Deavers**

### OPINION AND ORDER

Plaintiff Dealer VSC, Ltd. filed the Verified Complaint *sub judice* on June 29, 2021, naming Tricor Automotive Group-US-Inc. ("TAGUS") and Allegiance Administrators, LLC as Defendants. (Compl., ECF No. 1.) Both Defendants have filed motions to dismiss for lack of subject matter jurisdiction or, in the alternative, to abstain from exercising jurisdiction. (TAGUS Mot., ECF No. 7; Allegiance Mot., ECF No. 9.) The Motions are fully briefed and are ripe for decision. For the reasons set forth below, Defendants' Motions are **DENIED**.

### I.  FACTUAL BACKGROUND

All well-pled factual allegations in the Verified Complaint are considered as true for purposes of the Motions. *See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The following summary draws from the allegations in that Verified Complaint, the documents integral to and incorporated therein, and certain other documents subject to judicial notice.

### A.    Parties

Dealer VSC is an Ohio limited liability company, with its principal place of business in Ohio, whose sole member, Haytham ElZayn, is a resident of Ohio. (Compl., ¶ 5.) TAGUS is an Indiana corporation with its principal place of business in Indiana. (*Id.*, ¶ 6.) Allegiance is also an Ohio limited liability company with its principal place of business in Ohio—its ownership is the subject of this dispute. (*See id.*, ¶ 7, generally.)

### B.    Ownership Interests in Allegiance

Dealer VSC, TAGUS, and Allegiance entered into that certain Operating Agreement for Allegiance Administrators, LLC effective as of April 1, 2018. (2018 Operating Agreement, ECF No. 1-2.) Membership interests in Allegiance are issued in the form of Units. (*Id.*, § 2.72.) As of the effective date of the 2018 Operating Agreement, Dealer VSC held 51 Units, representing a 51% interest in Allegiance, and TAGUS held the remaining 49 Units. (*Id.*, § 1.8.)

In March 2019, Dealer VSC sold six of its Units to TAGUS. (Compl., ¶ 19.) Thereafter, TAGUS held the majority interest in Allegiance. (*Id.*) Dealer VSC alleges that, in May 2020, TAGUS improperly converted another 36 of its Units. (*Id.*, ¶ 20.) The alleged May 2020 conversion is the subject of litigation currently pending in Ohio and Indiana (the "State Court Litigation").[1] (*Id.*) As a result of

---

[1] The State Court Litigation is discussed, *infra*, at Section II.B. In addition to the State Court Litigation, this Court previously dismissed a fourth suit—filed by Dealer VSC and Mr. ElZayn against TAGUS, Allegiance, and others—for lack of

these Unit transfers, Dealer VSC was left with only nine Units—a 9% interest in Allegiance. (*Id.*, ¶ 21.)

### C.    The Shotgun Clause

The 2018 Operating Agreement contains a "Shotgun Clause" which, once triggered by an Offering Member, requires the Remaining Member to respond within a specified time electing to either sell all of the Remaining Member's Units, or buy all of the Offering Member's Units, according to the terms set out in the Shotgun Offer.[2] (*Id.*, ¶¶ 22–23. *See also* 2018 Operating Agreement, § 8.9.)

TAGUS triggered the Shotgun Clause by sending a Shotgun Offer dated May 11, 2021. (*See* Shotgun Offer, ECF No. 1-4.) Dealer VSC sent a response dated June 18, 2021, electing to "purchase the membership units of Allegiance . . . that are rightfully owned by [TAGUS] on the same terms and conditions set forth in the Shotgun Offer[.]" (Shotgun Offer Resp., ECF No. 1-5.) Three days later, TAGUS sent a letter stating its position that Dealer VSC's response to the Shotgun Offer was "inadequate" such that TAGUS "deemed" the response to constitute an acceptance of TAGUS's offer to purchase Dealer VSC's remaining nine Units. (June

---

subject matter jurisdiction. *See ElZayn v. Campbell*, No. 2:20-cv-493 (S.D. Ohio, Opinion and Order filed Mar. 11, 2020).

[2] In July 2020, TAGUS and Allegiance adopted a First Amended and Restated Operating Agreement "over the objection of Dealer VSC." (Compl., fn.1. *See also* 2020 Operating Agreement, ECF No. 1-3.) The validity of the 2020 Operating Agreement is also at issue in the State Court Litigation. (*See* Shotgun Offer Resp., fn. 1, ECF No. 1-5.) The parties agree that the 2020 Operating Agreement and the 2018 Operating Agreement contain substantively identical Shotgun Clauses. (*Compare* 2020 Operating Agreement, § 8.6 *with* 2020 Operating Agreement, § 8.9.)

3

21 Letter, ECF No. 1-1.) Dealer VSC alleges that, in this letter, TAGUS "repudiat[ed its] obligations under the Shotgun Clause" and "unilaterally [took] ownership of Dealer VSC's Units for itself." (Compl., ¶ 31.) Dealer VSC immediately "objected to [TAGUS]'s repudiation" and notified TAGUS of its intent to seek specific performance of the Shotgun Clause. (*Id.*, ¶¶ 34–35. *See also* June 22 Letter, ECF No. 1-6.) Dealer VSC has since demanded that TAGUS return possession and ownership of the nine Units that TAGUS allegedly converted in the June 21 Letter, but TAGUS has refused to do so. (Compl., ¶ 37.)

## II.     PROCEDURAL BACKGROUND

Dealer VSC filed this action alleging: (i) breach of the Shotgun Clause; (ii) conversion; (iii) breach of fiduciary duties; (iv) replevin; (v) constructive trust; and (iv) declaratory judgment. (*See id.*, ¶¶ 38–84.) Whether through declaration, equities, or money damages, Dealer VSC seeks relief amounting to the forced performance of the Shotgun Clause, with Dealer VSC surviving as "the sole owner of all 100 . . . Units of Allegiance[.]" (*Id.*, ¶¶ 84.E., 84.J.6.)

Defendants move to dismiss the Verified Complaint for lack of subject matter jurisdiction, arguing that there is not complete diversity of citizenship among the parties. (TAGUS Mot.; Allegiance Mot.) In the alternative, Defendants move the Court to abstain from exercising jurisdiction in favor of allowing the parties to first resolve the State Court Litigation. (*Id.*)

## III.     ANALYSIS

In essence, Defendants' Motions ask: Does this Court have jurisdiction over the instant action? If so, must—and *should*—that jurisdiction be exercised?

4

It is axiomatic that federal courts are courts of limited jurisdiction. *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003). Though such a court "must proceed with caution in deciding that it has subject matter jurisdiction," *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996), it is generally under a "strict duty to exercise the jurisdiction" conferred upon it, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). These principles lead the Court to conclude that subject matter jurisdiction exists and must be exercised.

### A.  Subject Matter Jurisdiction

Rule 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Without subject matter jurisdiction, a federal court has no authority to hear a case. *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990). "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Defendants here mount a facial attack.

A facial attack under Rule 12(b)(1) questions the sufficiency of the pleadings, and a court therefore takes the allegations in the complaint as true. *Gentek Bldg. Prods.*, 491 F.3d at 330. To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (quoting Fed. R. Civ. P. 8(a)). But mere "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (internal quotation and citation omitted). "[T]he plaintiff has the

5

burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

The Verified Complaint alleges that this Court has jurisdiction over the action by dint of diversity. (Compl., ¶ 9 (citing 28 U.S.C. § 1332(a)).) "A federal court has such jurisdiction only if complete diversity exists"—in other words, "only if each of the plaintiffs comes from a different State [than] each of the defendants." *Evanston Ins. Co. v. Housing. Auth. of Somerset*, 867 F.3d 653, 656 (6th Cir. 2017) (citation omitted). "The general rule is that diversity is determined at the time of the filing of a lawsuit. *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006). It is undisputed that, as of the date the Verified Complaint was filed, Dealer VSC was a citizen of Ohio and TAGUS was a citizen of Indiana. The parties disagree as to Allegiance's citizenship.

It is well-established that, for purposes of determining whether diversity exists, "a limited liability company has the citizenship of each of its members." *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). The facts giving rise to this case present a curious wrinkle in what is usually a straight-forward determination of citizenship: The dispute entirely concerns whether or not Dealer VSC is rightfully considered a member of Allegiance.

Defendants argue that the allegations in the Verified Complaint reveal that Dealer VSC "believes itself to currently be a member of Allegiance." (TAGUS Mot., 1.) Thus, accepting the allegations as true, complete diversity is lacking because Allegiance shares Dealer VSC's Ohio citizenship. (TAGUS Mot., 5; Allegiance Mot.,

6

6.) Dealer VSC argues in response that its Verified Complaint "plainly alleges complete diversity of citizenship . . . by alleging that [TAGUS] had taken over 100% ownership of Allegiance at the time the Complaint was filed." (Resp., 4.) Accordingly, in Dealer VSC's view, Allegiance is a citizen of Indiana alone. (*Id.*, 5.)

The Court agrees with Dealer VSC. The Verified Complaint alleges multiple times in multiple ways that TAGUS is the sole owner of Allegiance. (*See, e.g.*, Compl., ¶¶ 1, 2, 3, 6, 8, 10, 50, 58, 66.) What's more, it incorporates the June 21 Letter in which TAGUS unequivocally informed Dealer VSC that "[TAGUS] now owns 100% of the units of [Allegiance] and is the sole owner of [Allegiance]" and that "Dealer VSC is no longer a Member of [Allegiance]." (*Id.*, ¶ 33. *See also* June 21 Letter.) These allegations are sufficient to establish that, as of the date the Verified Complaint was filed, Allegiance had the citizenship of its sole member, TAGUS. Thus, complete diversity exists.

Defendants argue for the opposite conclusion. In their view, Dealer VSC's state law claims for conversion[3] and replevin[4] imply, or require, that Dealer VSC

---

[3] Under Ohio law, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.*, 551 N.E.2d 175 (Ohio 1990). "The elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Lee v. Ohio Educ. Ass'n*, 951 .3d 386, 393 (6th Cir. 2020) (internal quotation and citation omitted) (alteration in original omitted).

[4] Ohio's Ninth District Court of Appeals explained in *Schneider v. Schneider*:

Replevin is "an action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who wrongfully detains them." *Davis v. Springfield Police*

owns the Units at issue, thereby conferring Dealer VSC's Ohio citizenship on Allegiance and destroying diversity. Even assuming, *arguendo*, that claims for conversion and replevin require Dealer VSC to prove that it is a current member of Allegiance, the mere assertion of those claims does not deprive the Court of subject matter jurisdiction. Dealer VSC "is clearly permitted to plead alternative or even inconsistent claims without being subject to a motion to dismiss." *Lunkenheimer Co. v. Pentair Flow Control Pac. PTY Ltd.*, No. 1:11-cv-824, 2014 WL 4450034, at *5 (S.D. Ohio 2014) (Black, J.). *See also* Fed. R. Civ. P. 8(d)(2), (3) (permitting the pleading of alternative and inconsistent claims).

Defendants' motions to dismiss the Verified Complaint for lack of subject matter jurisdiction are **DENIED**.

---

*Dept.*, [No. 2003–CA–44, 2004 WL 473810, at ¶ *2 (Ohio Ct. App. Mar. 12, 2004) (quoting Black's Law Dictionary, 1299 (6th Ed. 1990))]. Replevin is a claim for wrongful detention of goods, but it does not require an unlawful taking. *Tewarson v. Simon*, [750 N.E.2d 176, 187 (Ohio Ct. App. 2001)]. "The action 'is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.' " *Id.* [(quoting *Black v. Cleveland*, 387 N.E.2d 1388, 1390 (Ohio Ct. App. 1978))]. The plaintiff in a replevin action is required to "prove that he is entitled to possession of the property and that, at the time the [suit] was filed, the defendant had actual or constructive possession and control of [it]." *Mulhollen v. Angel*, [No. 03AP–1218, 2005 WL 351761, at *5 (Ohio Ct. App. Feb. 15, 2005) (citing *Tewarson*, 750 N.E.2d at 187)].

897 N.E.2d 706, 710 (Ohio Ct. App. 2008) (cleaned up).

### B. *Colorado River* Abstention

Defendants argue in the alternative that the Court should invoke the *Colorado River* doctrine and abstain from exercising jurisdiction, in deference to the two cases comprising the State Court Litigation: *Dealer VSC, Ltd. v. Tricor Automotive Group-US-Inc., et al.*, Franklin County, Ohio, Court of Common Pleas, Case No. 20-CV-002998 and *Tricor Automotive Group v. Dealer VSC, Ltd., et al.*, Hamilton Circuit Court, Indiana, Case No. 29C01-2005-PL-003324.

The *Colorado River* doctrine refers to the circumstances in which federal courts may abstain from exercising jurisdiction due to the existence of parallel state court litigation. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). The Supreme Court has made clear that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," and is therefore appropriate only in "exceptional circumstances[.]" *Id.*, 424 U.S. at 813. "Before the *Colorado River* doctrine can be applied, the district court must first determine that the concurrent state and federal actions are . . . parallel." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). Although the actions need not be identical, they must be "substantially similar." *Id.*, 160 F.3d at 340 (internal quotation and citation omitted). "[T]he mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain." *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013). Instead, the cases must reflect a "congruence of interests and allegations[.]" *Romine*, 160 F.3d at 340.

Dealer VSC argues that this case is not parallel to the State Court Litigation because neither of those cases involve the June 2021 events—the Shotgun Offer, Response, June 21 Letter, June 22 Letter, or transfer of nine Units—which comprise the subject of this action. (Resp., 9.) The Court agrees. The State Court Litigation involves the same parties (or their privies), and, to a certain extent, requires examination of the same evidence and causes of action. But the State Court Litigation and the instant action are not "predicated on the same allegations as to the same material facts." *Romine*, 160 F.3d at 340. The Verified Complaint currently before this Court centers on the alleged conversion of Dealer VSC's last nine Units in Allegiance following TAGUS's June 2021 Shotgun Offer. (*See* Compl., generally.) The pleadings operative in the State Court Litigation were filed before the Shotgun Offer was made, in May 2020 (Hamilton Cty., Ind. Compl., ECF No. 14-2) and April 2021 (Franklin Cty., Ohio Second Am. and Suppl. Compl., ECF 7-3). The emergency injunctive relief sought by Dealer VSC in response to TAGUS's Shotgun Offer pre-dated Dealer VSC's Response to the Shotgun Offer and TAGUS's transfer of those final nine Units. (*See* ECF Nos. 17-1, 17-2.) Accordingly, the Court cannot consider this case and the State Court Litigation to be parallel proceedings sufficient to justify abstention under the *Colorado River* doctrine. *Cf. Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) (concluding that state and federal cases were not parallel in part because the cases involved allegations covering different time periods).

Defendants' motions to abstain from exercising jurisdiction over the Verified Complaint are **DENIED**.

### C.    Stay of Proceedings

Notwithstanding its finding that the federal and state actions are not parallel, the Court recognizes that granting the relief sought in this case would require at least some resolution of the State Court Litigation. Specifically, how many Units did TAGUS rightfully hold as of the date it sent the Shotgun Offer? The answer is either 91 Units or 55 Units, depending on whether Dealer VSC is successful on its pending claim that TAGUS converted 36 of its Units in Allegiance in May 2020. Accordingly, the parties are invited to file motion papers on whether this Court should invoke its inherent power to manage its docket, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), and stay these proceedings pending resolution of the dispute over ownership of those 36 Units as of the date of the Shotgun Letter.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions (ECF Nos. 7, 9) are **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**