### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**DEALER VSC, LTD.,**

           **Plaintiff,**          :

      **v.**

**TRICOR AUTOMOTIVE
GROUP-US-INC.,** *et al.***,**      :

        **Defendants.**

**Case No. 2:21-cv-3880
Judge Sarah D. Morrison
Magistrate Judge Elizabeth A.
Preston Deavers**

### OPINION AND ORDER

This matter is before the Court on the Joint Motion to Stay Proceedings filed by Defendants Tricor Automotive Group-US-Inc. ("TAGUS") and Allegiance Administrators, LLC. (Mot., ECF No. 35.) Plaintiff Dealer VSC, Ltd. opposed (Opp., ECF No. 38), and Defendants replied (Reply, ECF No. 39). The Motion is ripe for consideration. For the reasons set forth below, Defendants' Motion is **GRANTED**, and this case is **STAYED** until the related state court cases are fully and finally resolved.

### I.  FACTUAL BACKGROUND

Dealer VSC, TAGUS, and Allegiance are litigating a business dispute in multiple forums. At the crux of the dispute is: who is the rightful owner of Allegiance? The Court summarized the alleged facts in a previous Opinion and

Order filed February 22, 2022 ("Feb. O&O", ECF No. 31), and the facts relevant for

purposes of this Motion are repeated and supplemented below.

### A. Ownership Interests in Allegiance

Dealer VSC, TAGUS, and Allegiance entered into an Operating Agreement

for Allegiance Administrators, LLC effective as of April 1, 2018. (2018 Operating

Agreement, ECF No. 1-2.) Membership interests in Allegiance are issued in the

form of Units. (*Id.* § 2.72.) As of the effective date of the 2018 Operating Agreement,

Dealer VSC held 51 Units, representing a 51% interest in Allegiance, and TAGUS

held the remaining 49 Units. (*Id.* § 1.8.)

In March 2019, Dealer VSC sold six of its Units to TAGUS. (Compl., ECF No.

1, ¶ 19.) Thereafter, TAGUS held the majority interest in Allegiance. (*Id.*) Dealer

VSC alleges that, in May 2020, TAGUS improperly converted another 36 of its

Units. (*Id.* ¶ 20.) The alleged May 2020 conversion is the subject of litigation

currently pending in Ohio and Indiana state court, discussed below. (*Id.*) As a result

of these Unit transfers, Dealer VSC was left with only nine Units—a 9% interest in

Allegiance. (*Id.* ¶ 21.)

### B. The Shotgun Clause

The 2018 Operating Agreement contains a "Shotgun Clause" which, once

triggered by an Offering Member, requires the Remaining Member to respond

within a specified time electing to either sell all of the Remaining Member's Units,

or buy all of the Offering Member's Units, according to the terms set out in the Shotgun Offer.[1] (*Id.* ¶¶ 22–23. *See also* 2018 Operating Agreement, § 8.9.)

TAGUS triggered the Shotgun Clause by sending a Shotgun Offer dated May 11, 2021. (*See* Shotgun Offer, ECF No. 1-4.) Dealer VSC sent a response dated June 18, 2021, electing to "purchase the membership units of Allegiance . . . that are rightfully owned by [TAGUS] on the same terms and conditions set forth in the Shotgun Offer[.]" (Shotgun Offer Resp., ECF No. 1-5.) Three days later, TAGUS sent a letter stating its position that Dealer VSC's response to the Shotgun Offer was "inadequate" such that TAGUS "deemed" the response to constitute an acceptance of TAGUS's offer to purchase Dealer VSC's remaining nine Units. (June 21 Letter, ECF No. 1-1.) Dealer VSC alleges that, in this letter, TAGUS "repudiat[ed its] obligations under the Shotgun Clause" and "unilaterally [took] ownership of Dealer VSC's Units for itself." (Compl. ¶ 31.) Dealer VSC immediately "objected to [TAGUS]'s repudiation" and notified TAGUS of its intent to seek specific performance of the Shotgun Clause. (*Id.* ¶¶ 34–35. *See also* June 22 Letter, ECF No. 1-6.) Dealer VSC has since demanded that TAGUS return possession and

---

[1] In July 2020, TAGUS and Allegiance adopted a First Amended and Restated Operating Agreement "over the objection of Dealer VSC." (Compl. n.1. *See also* 2020 Operating Agreement, ECF No. 1-3.) The validity of the 2020 Operating Agreement is also at issue in Ohio and Indiana state court litigation. (*See* Shotgun Offer Resp. n. 1, ECF No. 1-5.) The parties agree that the 2020 Operating Agreement and the 2018 Operating Agreement contain substantively identical Shotgun Clauses. (*Compare* 2020 Operating Agreement, § 8.6 *with* 2020 Operating Agreement, § 8.9.)

ownership of the nine Units that TAGUS allegedly converted in the June 21 Letter, but TAGUS has refused to do so. (Compl. ¶ 37.)

## II.    PROCEDURAL BACKGROUND

The Court previously dismissed a related suit filed by Dealer VSC and its sole member, Haytham ElZayn, against TAGUS, Allegiance, and others for lack of subject matter jurisdiction. *ElZayn, v. Campbell,* No. 2:20-CV-493, 2020 WL 1164783 (S.D. Ohio Mar. 11, 2020). Dealer VSC and Mr. ElZayn refiled breach of contract, tort, and declaratory judgment claims in Ohio state court. *See Dealer VSC Ltd. v. Tricor Auto. Grp.–US–Inc.,* No. 20-cv-002998 (Franklin Cty. Ohio C.P. May 1, 2020) (the "Ohio Case"); (ECF No. 7-3).[2] Dealer VSC and Mr. ElZayn moved for preliminary injunction to, *inter alia*, enjoin TAGUS and Allegiance from giving effect to the terms of the 2020 Operating Agreement. (ECF No. 7-2.) After a three-day hearing, the magistrate judge denied the motion for preliminary injunction. (*Id.*) The Ohio Case remains pending, the parties are briefing dispositive motions, and a trial date has been set. (Ohio Case.)

There is a third related case that was initiated by TAGUS in Indiana state court for declaratory judgment and breach of contract in which TAGUS alleges Dealer VSC and Mr. ElZayn defaulted on a line of credit loan and TAGUS converted

---

[2] Federal courts may take judicial notice of proceedings in other courts of record. *Garcia v. Nerlinger*, No. 1:10-CV-788, 2012 WL 1156425, *2, n.2 (S.D. Ohio Apr. 6, 2012), report and recommendation adopted, No. 1:10-CV-788, 2012 WL 1537632 (S.D. Ohio May 1, 2012); *see also Lynch v. Leis*, 382 F.3d 642,648, n.5 (6th Cir. 2004) (noting that "these court records are available online to members of the public; as they are court records, this court may take judicial notice of them").

the Units to satisfy the default. *Tricor Auto. Grp. v. Dealer VSC, Ltd.*, Case No.: 29C01-2005-PL-3324 (Hamilton Cty. Ind. Cir. Ct., May 8, 2020) (the "Indiana Case"). When TAGUS triggered the Shotgun Clause in May 2021, Dealer VSC and Mr. ElZayn requested the issuance of a preliminary injunction in the Indiana Case, but it was denied. (ECF No. 9-1, PageID 356–80.)

In March 2022, the judge in the Indiana Case issued an order in favor of Dealer VSC and Mr. ElZayn, finding TAGUS wrongly converted the 36 Units and Dealer VSC is the rightful owner of 45 Units of Allegiance. (ECF No. 38-1, PageID 736) (the "Indiana Case March Order"). Dealer VSC and Mr. ElZayn's counterclaims for breach of contract and conversion remain pending for a trial on damages and other relief. (*Id.* PageID 737.) TAGUS and Allegiance filed a motion to certify the Indiana Case March Order for interlocutory appeal, which was granted. (Order Issued, Apr. 21, 2022, Indiana Case.) The judge explained:

> This dispute involves the legal interpretation of inter-related documents involving four parties. In a 35-page Order of March 28, 2022, this Court interpreted the documents as a matter of law, ruling for Dealer VSC and ElZayn. The March 28 Order is interlocutory, as multiple issues and procedural steps remain, discovery and expert work await, and ultimately trial will be necessary.

> Certification of this Court's Interlocutory Order for interlocutory appeal pursuant to Appellate Rule 14(B)(1)(c)(2) is particularly warranted in this setting and should be granted so that a final appellate determination can be made through prompt interlocutory appeal on these substantial legal issues for a more orderly, efficient disposition of this action (including through possible resolution by mediation). Although not necessary for interlocutory appeal in Indiana, that two judges in this Court and one in a neighboring Ohio court have reached different legal interpretations shows that there is substantial ground for difference of opinion on these core legal issues.

5

> Furthermore, absent interlocutory appeal Tricor and Allegiance will suffer substantial expense, damage, or injury if the Order is, respectfully, erroneous and the determination of the error is withheld until after judgment. Also, Tricor and Allegiance's remedy is otherwise inadequate if these core legal issues are not finally resolved until final judgment appeal. Certification for immediate appeal is thus also separately warranted pursuant to App. Rule 14(B)(1)(c)(1) and (3).

(*Id.*) The Indiana Case is ongoing and a pretrial conference is set.[3] (Order Granting Motion for Continuance, May 17, 2022, Indiana Case.)

Dealer VSC filed this case in June 2021 alleging breach of the Shotgun Clause and tort claims. (*See* Compl. ¶¶ 38–84.) Whether through declaration, equities, or money damages, Dealer VSC seeks relief amounting to the forced performance of the Shotgun Clause, with Dealer VSC surviving as "the sole owner of all 100 . . . Units of Allegiance[.]" (*Id.* ¶¶ 84.E., 84.J.6.)

Defendants filed motions to dismiss for lack of subject matter jurisdiction or, in the alternative, to abstain from exercising jurisdiction (ECF Nos. 7, 9), which the Court denied (Feb. O&O). The Court nevertheless asked the parties to file papers on the stay issue:

> Notwithstanding its finding that the federal and state cases are not parallel, the Court recognizes that granting the relief sought in this case would require at least some resolution of the State Court Litigation. Specifically, how many Units did TAGUS rightfully hold as of the date it sent the Shotgun Offer? The answer is either 91 Units or 55 Units, depending on whether Dealer VSC is successful on its pending claim that TAGUS converted 36 of its Units in Allegiance in May 2020. Accordingly, the parties are invited to file motion papers on whether this Court should invoke its inherent power to manage its docket, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), and stay these proceedings

---

[3] The Ohio Case and Indiana Case will be collectively referred to as the "State Court Litigation."

6

> pending resolution of the dispute over ownership of those 36 Units as of
> the date of the Shotgun Letter.

(*Id.* PageID 629.) The issue is fully briefed and ripe for review.

## III. ANALYSIS

A district court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The district court's broad discretion includes the power to stay a matter pending resolution of independent proceedings which bear upon the case at hand." *Unroe v. Vilsack*, No. 2:11-CV-592, 2012 WL 3527219, at *1 (S.D. Ohio Aug. 14, 2012) (Sargus, J.) (internal quotations and citations omitted).

The party seeking a stay of proceedings has the burden of establishing both the "pressing need for delay" and "that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977); *see also Landis,* 299 U.S. at 255. In determining whether to grant a stay, "district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (citation omitted).

### A. Need for a Stay

Defendants argue a stay is needed because it will simplify issues in this case. (Mot. PageID 682.) "The State Court Litigation will resolve numerous threshold

7

factual issues that precede the series of events at issue in this litigation," Defendants urge, and "this case cannot be properly adjudicated until those issues are resolved." (*Id.*) Defendants highlight the following factual issues that will be resolved by the State Court Litigation: who owned the 36 Units as of the date of the Shotgun Letter; whether Mr. ElZayn voluntarily resigned as Chief Executive Officer of Allegiance; and whether the 2020 Operating Agreement is effective. (*Id.*)

Plaintiff counters that Defendants cannot meet their burden of establishing that a stay is pressing because the underlying ownership dispute over the 36 Units has now been resolved by the Indiana Case March Order. (Opp. PageID 692–94; ECF No. 38-1, PageID 736.) Defendants reply that the Indiana Case March Order is an interlocutory order being appealed. (Reply PageID 765–67.) Defendants also argue the Order conflicts on issues of law with two orders in the State Court Litigation, and that the issue of ownership is still being litigated in the Ohio Case. (*Id.*)

The Court finds the need for a stay is great. This is the fourth lawsuit filed involving the same core ownership dispute between the same parties. Threshold factual issues will be decided in the State Court Litigation including the number of Units TAGUS held as of the date it sent the Shotgun Offer. (*See* Feb. O&O, PageID 629); *Muench v. Calderhead, Lockemeyer & Peschke L. Off.*, No. C-1-13-514, 2014 WL 1512504, at *3 (S.D. Ohio Apr. 16, 2014) (staying the federal action where plaintiff alleged defendant lawyers violated federal and state law by trying to collect

a debt when a state court collective action would resolve the threshold issue of whether the plaintiff was liable for that debt).

Plaintiff's contention that this issue has already been resolved by the Indiana Case March Order, obviating the need for the stay, is unavailing. The Order is being appealed. In fact, the appeal itself underscores the need for the stay, demonstrating the factual and legal issues in this dispute are being vehemently litigated. Breach of contract and tort claims remain in the State Court Litigation. Allowing for final adjudication of these issues and claims will aid this Court in deciding the dispute before it on the Shotgun Offer and prevent this Court from making contradictory findings to those made in the State Court Litigation.

The need for a stay factor weighs in favor of granting Defendants' Motion.

### B. Balance of Potential Hardship

Defendants urge that the parties will benefit from a stay because it will streamline the case; conversely, absent a stay, the parties could be prejudiced by inconsistent judgments. (Mot. PageID 683.) This litigation is at an early stage—answers were filed in March 2022, and limited discovery has taken place. (*Id.* PageID 682; *see* ECF Nos. 33, 34.) In contrast, the State Court Litigation has been pending for much longer, and discovery is nearly complete. (*Id.*)

Plaintiff argues that it would be unduly prejudiced by a stay because TAGUS is trying to sell Units that are at issue in the case. (Opp. PageID 695.) Plaintiff points to deposition testimony from TAGUS's director of governance, Dan Cornacchia, in which Mr. Cornacchia stated he was informed by TAGUS's CEO and

CFO that "they are exploring opportunities to—future opportunities to bring other investors into Allegiance." (*Id.* PageID 695–96; ECF 38-1, PageID 744.) Mr. Cornacchia testified about three potential investors and internal emails about selling ownership in Allegiance. (Opp. PageID 697; ECF 38-1, PageID 745–47.) Testimony from Allegiance's CFO also supports parts of Mr. Cornacchia's testimony. (Opp. PageID 697; ECF 38-1, PageID 756–59, 760–62.) Defendants reply that Mr. Cornacchia's testimony does not establish an imminent sale of the Units. (Reply PageID 768.) Defendants also highlight testimony from TAGUS's corporate representative: "Given that the ownership was being disputed, nobody is going to be investing in something until we get that resolved. Have there been cursory what-if discussions at the board level . . . yeah, we've had some philosophical discussions on how do we grow the business." (*Id.* PageID 769; ECF 39-9, PageID 783–84.)

Setting aside the factual dispute about whether TAGUS plans to sell Units of Allegiance, Plaintiff does not explain why this Court is the only forum in which it could move to prevent a potential sale if it were imminent. Plaintiff has already moved for preliminary injunctions in both the Ohio Case and Indiana Case, and the judges in those case are intimately familiar with this dispute. (Ohio Case, ECF No. 7-2; Indiana Court, ECF No. 9-1, PageID 355–80.) Plaintiff has two alternative forums in which it could seek to prevent any future sale.

The parties will benefit from a stay rather than incur hardship. The State Court Litigation has been pending for over two years now, the judges have ruled on

multiple motions, and discovery is complete or nearly complete. Allowing the State Court Litigation to come to completion will streamline the issues in this case.

This factor weighs in favor of granting Defendants' Motion.

### C. Promotion of Judicial Economy

Defendants aver staying the case will promote judicial economy because it will reduce the litigation burden for the parties and Court. (Mot. PageID 683.) It would be inefficient and unnecessarily costly to litigate the same underlying issues that are being litigated in the State Court Litigation. (*Id.*) Plaintiff makes no new arguments with respect to this factor. (Opp. PageID 695.)

As the Indiana Case judge explained in his order granting Defendants' motion to certify, "that two judges in this Court and one in a neighboring Ohio court have reached different legal interpretations shows that there is substantial ground for difference of opinion on these core legal issues." (Order Issued, Apr. 21, 2022, Indiana Case.) Final resolution of core factual and legal issues related to the ownership of Allegiance Units in the State Court Litigation will allow this Court to focus on the dispute before it, prevent any re-litigation of preliminary issues, and will "avoid imposing unnecessary costs and burdens on the Court and the parties through duplicative litigation." *See Unroe*, 2012 WL 3527219, at *11; *Muench*, 2014 WL 1512504, at *4 ("the strong likelihood that the [state court collective action] will resolve many, if not all, of the legal and factual issues raised by plaintiff's complaint strongly supports granting defendants' motion to stay in the interest of judicial

economy"). Judicial resources in two other forums, plus now the Indiana appellate court, are already being utilized in connection with this dispute.

Judicial economy considerations also weigh in favor of granting Defendants' Motion.

## IV.    CONCLUSION

The need for a stay, the balance of potential hardship, and judicial economy considerations all weigh in favor of a stay. For the reasons set forth above, Defendants' Motion (ECF No. 35) is **GRANTED,** and this case is **STAYED** until the State Court Litigation is fully and finally resolved.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

12